**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Claudette Trinidad, | No. CV-20-02496-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| BioLife Plasma Services, L.P., | |
| Defendant. | |

Pending before the Court is BioLife Plasma Services, L.P.'s ("Defendant") Motion to Dismiss or Motion for Judgment on the Pleadings (Doc. 23.)  For the following reasons, the Court denies the Motion.[1]

**BACKGROUND**

Defendant operates plasma collection facilities, including a plasma donation facility in Tempe, Arizona.  (Doc. 20 at 2); (Doc. 23 at 1.)  Pursuant to federal law, Defendant is required to test each plasma donation it receives for "evidence of infection due to a relevant transfusion-transmitted infection(s)," including the human immunodeficiency virus ("HIV").  21 C.F.R. § 610.41(a) (2016).

On July 23, 2020, Plaintiff visited Defendant's Tempe facility but was informed she would not be able to donate because of "an unspecified issue relating to her blood test

---

[1] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

1    results." (Doc. 20 at 2.)  On July 31, 2020, Plaintiff received a package from Defendant

2    advising that Plaintiff had tested positive for HIV.  After failing to manifest any HIV

3    symptoms for several months, Plaintiff was tested again at Sonoran Quest Laboratories on

4    November 2.  (Doc. 20 at 3.)  The test came back negative, and this suit followed.

5                                                     **DISCUSSION**

6    **B. Defendant's Motion to Dismiss for Failure to State a Claim**

7                 **1.  Legal Standard**

8                 To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

9    Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the

10   elements of a cause of action"; it must contain factual allegations sufficient to "raise a right

11   to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

12   (2007).  When analyzing a complaint for failure to state a claim, "allegations of material

13   fact are taken as true and construed in the light most favorable to the nonmoving party."

14   *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  However, legal conclusions couched

15   as factual allegations are not given a presumption of truthfulness, and "conclusory

16   allegations of law and unwarranted inferences are not sufficient to defeat a motion to

17   dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

18               **2.  Did Defendant Owe Plaintiff a Duty to Provide Accurate Test Results?**

19               The only duty alleged in the Amended Complaint is "a duty to provide accurate test

20   results, knowing that Plaintiff and her medical providers would rely on said results to care

21   for Plaintiff." (Doc. 20 at 3.)  Defendant argues that no such duty exists, because the

22   informed consent given by Plaintiff prior to her plasma draws, attached as Exhibit B to

23   Defendant's motion, demonstrates that Plaintiff was aware (1) that her blood would be

24   tested for HIV, (2) that there was "a small possibility of a false positive test result," and

25   (3) that the screening tests should not be used for health reasons.  (Doc. 23-2 at 4.)  She

26   nevertheless consented to the blood draw.  (Doc. 23-2 at 5.)  Defendant further alleges that

27   these same disclaimers and explanations were provided on forms accompanying the results

28   of Plaintiff's test which were sent back to her and attached as Exhibit A to Defendant's

1   motion.  (Doc. 23 at 3–5.)

2          The gist of Defendant's motion is that there can be no duty to Plaintiff to provide

3   her with accurate test results when Plaintiff consented to the blood draw both knowing that

4   there was a small possibility of false positive results and acknowledging that screening

5   tests should not be used for health reasons.

6   **A.  Defendant's Attached Documents**

7          "[E]vidence outside the pleadings . . . cannot normally be considered in deciding a

8   12(b)(6) motion."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).  "A

9   court may, however, consider certain materials—documents attached to the complaint,

10  documents incorporated by reference in the complaint, or matters of judicial notice—

11  without converting the motion to dismiss into a motion for summary judgment."  *United*

12  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see* Fed. R. Civ. P. 12(d).  "Even if a

13  document is not attached to a complaint, it may be incorporated by reference into a

14  complaint if the plaintiff refers extensively to the document or the document forms the

15  basis of the plaintiff's claim."  *Id.*  However, "the mere mention of the existence of a

16  document is insufficient to incorporate the contents of a document."  *Coto Settlement v.*

17  *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Moreover, "if the document merely

18  creates a defense to the well-pled allegations in the complaint, then that document did not

19  necessarily form the basis of the complaint."  *Khoja v. Orexigen Therapeutics, Inc.*, 899

20  F.3d 988, 1002 (9th Cir. 2018).

21         Exhibit A is the UPS package Plaintiff received that contained the false positive test

22  result.  (Doc. 23 at 2–3); (Doc. 23-1.)  Plaintiff references this package in the Amended

23  Complaint, and she alleges that the false positive test result was "emotionally and

24  spiritually crush[ing]."  (Doc. 20 at 3.)  The package, therefore, forms the basis of the

25  complaint because it does not merely "create[ ] a defense" but is the very event that

26  allegedly triggered Plaintiff's entitlement to relief.  *Khoja*, 899 F.3d at 1002.  The Court

27  will consider Exhibit A.

28         The Court does not understand, however, how the Defendant might negate any duty

1    it owes to Plaintiff by providing her with her test results and explanations of what the results

2    may or may not mean as it apparently did in Exhibit A.  Such actions do not establish the

3    non-existence of a duty.  They may establish that any duty owed by Defendant to Plaintiff

4    was fulfilled, but Defendant explicitly disavows making any such argument at this stage of

5    the litigation.  (Doc. 27 at 2 n.1.)  ("While BioLife would also raise the defense of and

6    argue that even if it did owe a duty, it did not breach that duty, BioLife recognizes that such

7    an argument would be better raised in a motion for summary judgment, and is not arguing

8    'no breach' in its underlying Motion [Doc. No. 23], but reserves it right to such defense.")

9         Exhibit B is an "Informed Consent for Automated Plasmapheresis" that was

10   allegedly given to Plaintiff on July 16, 2020.  (Doc. 23-2.)  Plaintiff does not mention this

11   document in the Amended Complaint.  The Court understands how an informed consent,

12   signed by the Plaintiff prior to the plasma draw, which acknowledged the possibility of

13   false positive tests and the need not to use the results of such tests for health care

14   purposes—such as the Defendant seeks to introduce through Exhibit B—might limit the

15   scope of any duty Defendant owes to Plaintiff to provide her with accurate results.  But the

16   document does not form the basis of a claim—it forms the basis of a defense, which

17   Defendant admits: "[The] forms (Ex. B) are central to Plaintiff's sole negligence claim *as

18   it establishes that no legal duty exists* as alleged."  (Doc. 23 at 4.)  It can hardly be said that

19   a document that allegedly negates the existence of a claim can form the basis of Plaintiff's

20   complaint.  Therefore, the Court will not consider Exhibit B at this point in the case.

21        To the extent that the Defendant argues, in the absence of Exhibit B, that there could

22   be no duty of reasonable care that might incorporate accurate testing, such an argument

23   fails at this point in the litigation.  "To establish a claim for negligence, a plaintiff must

24   prove four elements: (1) a duty requiring the defendant to conform to a certain standard of

25   care; (2) a breach by the defendant of that standard; (3) a causal connection between the

26   defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*,

27   214 Ariz. 141, 143, 150 P.3d 228, 230 (2007).  "Whether the defendant owes the plaintiff

28   a duty of care is a threshold issue; absent some duty, an action for negligence cannot be

1    maintained." *Id.*

2        "Duties of care may arise from special relationships based on contract, family

3    relations, or conduct undertaken by the defendant." *Id.* at 145, 150 P.3d at 232. "A special

4    or direct relationship, however, is not essential in order for there to be a duty of care." *Id.*

5    Public policy, as evidenced through statutes and common law, may also establish a duty of

6    care. *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 601, 307 P.3d

7    1025, 1028 (Ct. App. 2013). Here, Plaintiff does not argue that a special relationship

8    creates a duty of care. Therefore, the Court will consider only whether public policy creates

9    such a duty.

10       The Arizona Supreme Court addressed a similar factual situation as this case in

11   *Stanley v. McCarver*, 208 Ariz. 219, 92 P.3d 849 (2004).[2] There, the court imposed a duty

12   of care despite the lack of any special relationship between the plaintiff and the defendant.

13   The court based its holding on the fact that the defendant agreed to interpret the plaintiff's

14   medical records and to accurately report them.[3] *Id.* at 223, 92 P.3d at 853. The court noted

15   that "placing oneself in the hands of a medical professional" may establish "a reasonable

16   expectation that the 'expert will warn of "incidental dangers of which he is cognizant due

17   to his peculiar knowledge of his specialization."'" *Id.* (quoting *Green v. Walker*, 910 F.2d

18   291, 296 (5th Cir. 1990)). *Stanley* also seemed to address the precise issue in this case:

19   "We do not imagine, . . . that if [the defendant] falsely told the employer that [the plaintiff]

20   ────────────────
     [2] Plaintiff also argued that Ariz. Rev. Stat. § 32-1481 imposes a statutory duty on
21   Defendant. However, a statute may only establish a duty of care "if it 'is designed to
     protect the class of persons, in which the plaintiff is included, against the risk of the type
     of harm which has in fact occurred as a result of its violation.'" *Gilbert Tuscany Lender,*
22   *LLC*, 232 Ariz. at 601, 307 P.3d at 1028 (quoting *Est. of Hernandez v. Ariz. Bd. of Regents*,
     177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994)). The Court is doubtful that Plaintiff
23   would be within the class of plaintiffs the statute was intended to protect, especially when
     Section B of the statute holds *donors* liable for their own negligence. Clearly, the statute
24   was not intended for Plaintiff's benefit.

25   [3] Although Defendant argues that this case is distinguishable from *Stanley* because
     Defendant received no consideration, (Doc. 27 at 6), *Stanley*'s holding did not rest on
26   whether there was consideration. *Stanley*, 208 Ariz. at 223–24, 92 P.3d at 853–54
     ("Section 324A suggests imposing a duty on one 'who undertakes, *gratuitously or for*
27   *consideration*, to render services to another which he should recognize as necessary for the
     protection of a third person.'" (emphasis added)). The distinction is especially inapplicable
28   in this case because Defendant was legally obligated not to accept the consideration—
     Plaintiff's plasma—once it learned of the positive test result. 21 C.F.R. § 610.41.

1    had tuberculosis when she did not, thus denying her employment . . . that the absence of a

2    formal doctor-patient relationship would preclude a lawsuit." *Id.* at 226, 92 P.3d at 856

3    n.7.  This language seems to suggest that placing oneself in the hands of a medical expert

4    creates a reasonable expectation of accurate results, even if the expert was not consulted

5    "for Plaintiff's benefit." (Doc. 27 at 5.)

6          Even if the above suggestion in *Stanley* does not establish a duty, however, a duty

7    is implied based on *Stanley*'s analysis itself.  The *Stanley* court considered several factors

8    to determine whether a duty should be implied absent a special relationship.  These

9    included, (1) the existence of a formal doctor–patient relationship; (2) the extent of the

10   relationship; (3) the type of tests conducted; (4) whether the defendant was in a unique

11   position to prevent harm; (5) the burden of preventing harm; (6) whether the plaintiff relied

12   upon the [defendant's] diagnosis or interpretation; (7) the closeness of the connection

13   between the defendant's conduct and the injury suffered; (8) the degree of certainty that

14   the plaintiff has suffered or will suffer harm; and (9) the skill or special reputation of the

15   actors.  *Id.* at 223, 92 P.3d at 853.  Applying those factors to this case favors imposing a

16   duty.

17         First, no doctor–patient relationship existed in this case; however, one did not exist

18   in *Stanley* either.  Second, Plaintiff visited Defendant's facilities at least three times, (Doc.

19   20 at 2), and Defendant—presumably—performed a screening test each time.  Although

20   this factor does not weigh strongly in either direction, the relationship in this case seems to

21   be more direct than the one in *Stanley*, in which the defendant was independently

22   contracted with one of the parties.  208 Ariz. at 220, 92 P.3d at 850.  Third, Defendant

23   performed screening tests and two confirmatory tests for HIV.  (Doc. 23-1 at 7.)  These

24   tests, like *Stanley*, would have made Defendant privy to certain information regarding

25   Plaintiff's health—although perhaps not to the extent of the defendant in *Stanley*, who had

26   access to the plaintiff's "confidential medical record."  208 Ariz. at 223, 92 P.3d at 849.

27   Fourth, Defendant was in a unique position to prevent harm because it was in the exact

28   position as the defendant in *Stanley*: screening for signs of disease, but not for Plaintiff's

1    benefit.  Fifth, Defendant bore the burden of preventing harm because it held itself out as

2    a "state-of-the-art facility" and was the entity in charge of handling Plaintiff's testing.

3    (Doc. 20 at 2.)  Plaintiff had no control over that process.  Sixth, Plaintiff clearly alleges

4    that she relied on Defendant's diagnosis.  (Doc. 20 at 3–4.)  Seventh, there was a close

5    connection between Defendant's false positive test and Plaintiff's emotional injury;

6    however, the connection is lessened by Plaintiff's failure to get retested until three months

7    after the false positive result, during which time Plaintiff knew that the confirmatory tests

8    were "negative" and "indeterminate."[4]  (Doc. 20 at 3–4); (Doc. 23-1 at 7.)  Eighth, it was

9    not certain that Plaintiff would suffer harm from a false positive test result because she

10   could have sought a confirmation test; however, there is likely some chance for harm,

11   especially emotional harm, created by receiving a false HIV diagnosis.  And finally,

12   Defendant held itself out as having special skills by purporting to be a "state-of-the-art"

13   facility. (Doc. 20 at 2.)  Plaintiff, presumably, would have no special skills as a mere donor.

14          The Fourth, Fifth, Sixth, and Ninth factors clearly weigh for the imposition of a

15   duty, and the Second, Seventh, and Eighth factors tend to weigh for the imposition of a

16   duty, although these are somewhat less clear.  Only the First and Third factors clearly weigh

17   against imposing a duty.  The great weight of the factors favors imposing a duty and

18   "illuminate[s] the concerns that motivate tort liability" in this case.  *Stanley*, 208 Ariz. at

19   223, 92 P.3d at 853.  Based on the public policy considerations as enumerated in *Stanley*,

20   the Court holds that Arizona would impose a duty of care on Defendant based on the facts

21   of as pleaded in the Amended Complaint.

22          That *Stanley* involved a medical malpractice claim instead of an ordinary negligence

23   claim, as alleged here, does not change this result.[5]  *Stanley*'s holding was not limited to

24   medical malpractice claims.  Although the court focused on the absence of a doctor–patient

25   relationship, it specifically noted that imposing a duty "in these circumstances also

26   _____
     [4] "When the confirmatory test is reported to be indeterminate, it indicates that the test result
27   was not definitely positive or negative as per manufacturer's guidelines." (Doc. 23-1 at 4.)

28   [5] Because this Court has determined that *Stanley v. McCarver* establishes a duty under the
     pleaded facts, it does not reach the question of whether a duty also exists under Ariz. Rev.
     Stat. § 12-561, which pertains specifically to medical malpractice.

1    comports with the Restatement (Second) of Torts." *Stanley*, 208 Ariz. at 223, 92 P.3d at

2    853 (citing Restatement (Second) of Torts § 324A (Am. L. Inst. 1965)).  Thus, even if the

3    court was deciding a medical malpractice claim, it explicitly stated that general tort

4    principles as expounded in the Restatement supported the holding.  *Id.*  In addition to citing

5    the Restatement, the court also relied on Prosser's *Handbook of the Law of Torts*, again

6    expounding general negligence principles not specific to medical malpractice.  *Id.* at 224,

7    92 P.3d at 854 (citing William L. Prosser, *Handbook of the Law of Torts* § 53, at 324).

8    Most tellingly, however, the court did not apply Arizona's medical malpractice statute to

9    determine the scope of the standard of care; instead, it cited Prosser and referenced the

10   statute in a footnote.  *Id.* at n.5.  If the court were limiting itself to only the policies

11   underlying medical malpractice, it would have had no reason to apply Prosser instead of

12   the clearly applicable statute.  Therefore, *Stanley* is not limited to just medical malpractice

13   claims but establishes Arizona's general public policies toward the imposition of a duty

14   under the specific facts of the case: "[T]he duty emanates from the panoply of social

15   concerns *that generally inform tort law*"—not just the narrow subset of tort law that is

16   medical malpractice.  *Id.* at 226, 92 P.3d at 856 (emphasis added).

17          Moreover, this Court's decision is supported by the trend of other state courts.

18   Although Arizona courts are not bound by cases in other states, they are persuasive

19   authority.  *Hodai v. City of Tucson*, 239 Ariz. 34, 42, 365 P.3d 959, 967 n.8 (Ct. App. 2016)

20   ("[O]ur courts may look to cases from other jurisdictions as persuasive authority."); *see*

21   *also Bunker's Glass Co. v. Pilkington PLC*, 202 Ariz. 481, 491, 47 P.3d 1119, 1129 (Ct.

22   App. 2002); *HM Hotel Props. v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 853–54

23   (D. Ariz. 2012) (collecting Arizona cases considering out-of-state decisions).  Other states

24   have imposed a duty on laboratories providing test results to third parties, even if not

25   undertaken for the plaintiff's benefit.  *See, e.g.*, *Landon v. Kroll Lab'y Specialists*, 999

26   N.E.2d 1121, 1124 (N.Y. 2013) ("Without question, the release of a false positive report

27   will have profound, potentially life-altering, consequences for a test subject.");

28   *Quisenberry v. Compass Vision, Inc.*, 618 F. Supp. 2d 1223, 1128 (S.D. Cal. 2007) ("[T]he

1    overall trend is for the courts to recognize that a laboratory owes a duty to its test subject,

2    regardless of whether a contractual relationship exists between them."); *Sharpe v. St.*

3    *Luke's Hosp.*, 821 A.2d 1215, 1219 (Pa. 2003)  ("[T]he [defendant], in turn, should have

4    realized that any negligence with respect to the handling of the specimen could harm [the

5    plaintiff] . . . .").  The Court therefore holds that in light of both *Stanley* and the trend in

6    other states, as well as the absence at this point of any consideration of Exhibit B, Plaintiff

7    has alleged sufficient facts to establish *some* duty.  The Court, therefore, declines to

8    determine the scope of the duty of care at this early stage of the litigation.

9    **B.  Defendant's Motion for Judgment on the Pleadings**

10         Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

11   pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  The

12   standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally

13   identical" to that governing a Rule 12(b)(6) motion.  *Dworkin v. Hustler Magazine Inc.*,

14   867 F.2d 1188, 1192 (9th Cir. 1989).  When analyzing a Rule 12(c) motion, the court must

15   accept the nonmovant's allegations as true, *see Hal Roach Studios v. Richard Feiner &*

16   *Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989), and construe factual allegations in a complaint

17   in the light most favorable to the nonmovant.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th

18   Cir. 2009).  "Judgment on the pleadings under Rule 12(c) is proper when the moving party

19   establishes on the face of the pleadings that there is no material issue of fact and that the

20   moving party is entitled to judgment as a matter of law."  *Jensen Fam. Farms, Inc. v.*

21   *Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

22         Because Defendant owed Plaintiff a duty, as explained above, there is a genuine

23   issue of material fact as to whether Defendant breached that duty by providing a false test

24   result.  Therefore, Defendant's Motion for Judgment on the Pleadings is denied.

25                                  **CONCLUSION**

26         Because the Court finds Defendant owed Plaintiff a duty, Plaintiff has properly

27   pleaded a claim on which relief may be granted.  Defendant's motions are, therefore,

28   denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or Motion for Judgment on the Pleadings (Doc. 23) is **DENIED**.

Dated this 14th day of October, 2021.

_____
G. Murray Snow
Chief United States District Judge